[Civ. No. 24210.   First Dist., Div. Four.   May 31, 1967.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. PATRONELLO VALLEJOS et al., Defendants and Appellants.

Fadem & Graves and Gideon Kanner for Defendants and Appellants.

Harry S. Fenton, R. B. Pegram, Joseph A. Montoya, Richard L. Franck, Charles E. Spencer, Jr., and Elbert E. Hensley for Plaintiff and Respondent.

DEVINE, P. J.—Appellants are the owners of a lot on which their home stands. It is near but not within the City of

Whittier. The east boundary of the lot abuts Pioneer Boulevard and access to this way has not been disturbed. Access from Choisser Street, upon which the south border of the lot abuts, was taken by the state by eminent domain for use in construction of an off-ramp from the San Gabriel Freeway. The owners were awarded $2,500, which the parties agreed upon as damages for loss of access.

Appellants argue, nevertheless, that the award is insufficient because, they say, deprivation of access is not their only loss, for the state has taken their one half of the street for a surface drainage channel and has built a fence between their lot and the channel. Appellants contend that the county has abandoned the street; that upon abandonment they, as owners of adjacent property, are entitled to the unencumbered fee out to the middle of the former street; and that the taking of this property by the state for the drainage channel is a wholly separate appropriation which must be paid for. It is stipulated by the parties that the value of the one-half part of the street, if it were vacated, would be $2,000. The state's position is that the County of Los Angeles did not abandon the easement but transferred it under law to the state, and that an easement for street purposes includes the function of drainage of surface waters.

### Presentation of the Issue

There is a preliminary question, that is, whether the issue can be considered. Respondent contends that it was not before the trial court. During the trial, in which no testimony but lengthy arguments (related, in large part, to a nuisance theory, now abandoned) and certain documents were presented, the court granted a motion to amend appellants' pleadings, apparently to include the issue which gives rise to this appeal. Amendment, however, was not actually accomplished. ▆▆ Amendment may be allowed during trial, without the formalities usually required for motions. (*McKee* v. *Mires,* 110 Cal.App.2d 517, 522 [242 P.2d 954].) But an actual written amendment must be filed in order to comply with the requirements of pleading. The order allowing the amendment is not the equivalent of the amendment itself. (*Central Cal. Creditors' Assn.* v. *Seeley,* 91 Cal.App. 327, 331 [267 P. 138]; *Conroy* v. *Perez,* 64 Cal.App.2d 217, 228 [148 P.2d 680]; *Berkeley Crematory, Inc.* v. *City of El Cerrito,* 146 Cal.App.2d 265, 267 [303 P.2d 769].) Pleadings are the formal allegations by the parties of their respective claims

and defenses. (Code Civ. Proc., § 420.) Lack of the required written allegations of pleading usually is productive of imprecision in the assertion of demands, obscurity and confusion in argument, absence or deficiency of findings, and, on appeal, an unsatisfactory record.

The statutory requirement of formal pleading is, nevertheless, subject to the exception that if the case has been tried as if amendment had been filed, the issue which should have been stated formally will be considered on appeal. (*Campagna* v. *Market Street Ry. Co.*, 24 Cal.2d 304, 308 [149 P.2d 281]; *Provost* v. *Worrall*, 142 Cal.App.2d 367, 373 [298 P.2d 726].) ▮ Although the issue was not stated with the clarity which would have been required of a written pleading, nor presented to the trial court in as satisfactory manner as it is on appeal, we find it fair to consider it. The findings state that a surface channel and fence will be constructed on the north one half of Choisser Street, and there is a stipulation that the value of the fee would be $2,000. These would not have been relevant if the present issue had not been put, although informally, before the trial court. Besides, the evidence consists wholly of documents.

Questions of law only are presented on the facts appearing in the record; wherefore, even a change in theory would be permitted on appeal. (*Burdette* v. *Rollefson Constr. Co.*, 52 Cal.2d 720, 725-726 [344 P.2d 307]; *Ward* v. *Taggart*, 51 Cal.2d 736 [336 P.2d 534]; *Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738]; *Estate of Hunter*, 194 Cal.App.2d 859, 862 [15 Cal.Rptr. 556].) The inadequacy of the pleading and the somewhat obscure presentation in the trial court of appellants' theory, therefore, do not bar our consideration of it.

### Issue of Abandonment of the Street

Appellants' claim is based on the proposition that Choisser Street has been abandoned, first by resolution of the board of supervisors, and second by actual closing of the street to traffic. The resolution recites: "WHEREAS, the County of Los Angeles and the State of California have heretofore entered into a Freeway Agreement [describing it]; and WHEREAS, further engineering studies indicate that the following revisions are desirable, to wit: . . . 1. Provide effective closure as shown on the enclosed plan of the following County roads: . . . B. Choisser Street at Bradwell Avenue . . . Now, THEREFORE, be it resolved and ordered that the Board of Supervisors

of the County of Los Angeles hereby concurs and approves the proposed revisions set forth hereinabove, it being understood that a revised freeway agreement incorporating said revisions to be entered into at some future date.''

It is plain that this resolution does not purport to have been made according to the provisions of sections 956 to 960.4 of the Streets and Highways Code, in which the manner of abandonment of county roads is set forth. (Sections 8306 and 8324 of the Streets and Highways Code, cited by appellants in their opening brief, are inapplicable because they refer to streets within a city, and Choisser Street is not within a city.) Where statute provides a procedure of abandonment this becomes exclusive. (*County of San Diego* v. *California Water & Tel. Co.*, 30 Cal.2d 817, 823 [186 P.2d 124, 175 A.L.R. 747]; *Smith* v. *Ricker*, 226 Cal.App.2d 96, 100 [37 Cal.Rptr. 769].) But the resolution was in conformity with an agreement made by the County of Los Angeles with the State of California pursuant to the provisions of sections 100.2 and 100.25 of the Streets and Highways Code. By this agreement, the county agrees to the closing of county roads and to the making by the state of such changes affecting county roads in the construction of the freeway as may be agreed upon. Section 100.2 of Streets and Highways Code sets up an integrated and complete means of closing city streets or county highways as an incident to construction of freeways. A board of supervisors which elects to follow this method acts within authority of law in doing so. (*Armas* v. *City of Oakland*, 183 Cal.App.2d 137, 139 [6 Cal.Rptr. 750]; *People* ex rel. *Dept. of Public Works* v. *City of Los Angeles*, 220 Cal.App.2d 345, 368 [33 Cal.Rptr. 797].) The *Armas* case involves city streets, but the principle is the same because section 100.2 refers to ''any city street or county highway.''

But the ''closing'' of the street in pursuance of section 100.2 and of the agreement between the state and the county and of the resolution of the board of supervisors, does not constitute an abandonment of the original easement. The street, although converted to the use of the freeway system, is still being used for highway purposes. There has been constructed on the south half of Choisser Street a curving freeway off-ramp. On the north half, to which appellants own the underlying fee, there is the drainage channel.[1] The drain-

---

[1]Appellants refer to this in their opening brief as a ''flood control channel''; but this is improper because the court makes reference in its

age channel is part of the highway system, no less than is the ramp. "As used in this code, unless the particular provision or the context otherwise requires, 'highway' includes bridges, culverts, curbs, drains, and all works incidental to highway construction, improvement, and maintenance." (Sts. & Hy. Code, § 23.) Drainage of water is an integral part of a highway system. (24 Cal.Jur.2d, § 71, p. 741; *Genazzi* v. *County of Marin*, 88 Cal.App. 545 [263 P. 825].)

Whenever there is abandonment of an easement or vacation of a highway where the county owns only an easement, the abandonment or vacation having been accomplished under sections 954-960.2 of the Streets and Highways Code, title to the easement reverts to the owner of the underlying fee by the express provision of section 960.3. But sections 100.2 and 941.2, relating to the closing of streets at or near their intersection with any freeway, do not make provision for reversion of the easement. Sections 100.2 and 941.2 operate independently of the other provisions. (*Armas* v. *City of Oakland, supra*, 183 Cal.App.2d 137.)

Thus, what has happened to Choisser Street is that it remains part of the highway system, one half of it being used for traffic, the other half for drainage. The easement for drainage, as one function of a highway, has not been abandoned or extinguished. If appellants own the underlying fee, which it would seem respondent does not dispute, it is of but nominal value, because of the burden of the easement. (*People ex rel. Dept. of Public Works* v. *Schultz Co.*, 123 Cal.App.2d 925, 937-938 [268 P.2d 117].) For that which has been lost, access, payment has been made.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied June 30, 1967, and appellants' petition for a hearing by the Supreme Court was denied July 26, 1967.

---

findings to "surface drainage channel," although appellants had proposed the words "storm drain." Further description of the channel does not appear in the record.